# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00992-RBJ-KLM

AHMAD AJAJ,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
WARDEN JOHN OLIVER, in his individual capacity,
WARDEN DAVID BERKEBILE, in his individual capacity,
ASSOCIATE WARDEN TARA HALL, in her individual capacity,
RELIGIOUS COUNSELOR GEORGE KNOX, in his individual capacity,
OFFICER D. PARRY, in his individual capacity,

    Defendants.

## INDIVIDUAL-CAPACITY DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants Berkebile, Hall, Knox, Oliver, and Parry ("*Bivens* Defendants" or "Defendants") respectfully move for reconsideration of the order denying them qualified immunity on Claim Four, an equal-protection claim. (*See* Doc. 111 at 16.)[1] They ask that the Court reconsider its decision not to address their argument that there is no *Bivens* remedy for an equal-protection claim regarding an alleged denial of congregate prayer to a terrorist housed in the most secure federal prison in the country. The *Bivens* Defendants also respectfully submit that the Court should reconsider the other grounds in the motion to dismiss that it rejected and grant them qualified immunity. Plaintiff did not allege facts showing a constitutional violation, did not allege facts showing a clearly established right of which every reasonable official in each Defendant's position would have known, and did not allege facts showing personal participation by each Defendant, including two former ADX wardens.

The *Bivens* Defendants recognize that motions to reconsider are disfavored, particularly where a party seeks to have a Court reconsider arguments that it previously made. They appreciate the time that the Court took to consider their motions to dismiss and the effect that a motion to reconsider may have

---

[1] Counsel for Defendants conferred with Plaintiff's counsel, who stated that this motion is opposed.

on the Court's docket.  However, the *Bivens* Defendants have a right to take an interlocutory appeal of the denial of qualified immunity.  *Ashcroft v. Iqbal*, 556 U.S. 662, 671-72 (2009); *see also Vega v. Davis*, 572 F. App'x 611 (10th Cir. 2014) (reversing district court's denial of qualified immunity to former ADX Warden in inmate suicide case), *appeal after remand*, No. 16-1028.  Moreover, because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth,* 472 U.S. 511, 528 (1985), it should be resolved "at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Before they proceed with determining whether or not to take such an appeal, the *Bivens* Defendants respectfully request the Court to reconsider its determination for the reasons below.

Only Claim Four remains against the *Bivens* Defendants.  Claim Four makes generic allegations, without factual content, that inmates of other faiths are allowed to pray together, while Plaintiff and Muslims are not, in violation of the Equal Protection Clause.  (Doc. 29 at pp. 57-58.)  It makes allegations in the passive voice that inmates of other faiths "are able" or "are allowed" to pray with their clergypersons (*id.* ¶¶ 313, 315) but fails to identify any specific Defendant's involvement.  Plaintiff also ignores the religion-neutral ban on congregate services at ADX, which includes a ban on the type of formal congregate prayer Plaintiff seeks here.  (*Id.* ¶¶ 298, 299).

Judge Mix recommended this claim be permitted to proceed with respect to congregate prayer.  The *Bivens* Defendants objected, arguing they were entitled to qualified immunity because:  (1) Plaintiff had failed to allege facts showing a cognizable equal-protection claim; (2) Plaintiff had not alleged facts showing a violation of a clearly established right of which every official in each Defendant's position would have known; (3) Plaintiff's conclusory allegations did not show personal participation; and (4) no *Bivens* remedy should be implied in this context—*i.e.*, where a convicted terrorist is asking to participate in congregate prayer in the country's most secure federal prison.  Defendants acknowledged they had not raised the fourth argument in their motion, although they had raised the same arguments for the First Amendment claim, which the Court adopted.  In resolving Defendants' Objections, the Court

2

rejected the first three arguments and declined to consider the fourth. (Doc. 111 at 116).

## ARGUMENT

Government officials performing discretionary functions are generally shielded from liability for damages when their conduct does not violate "clearly established" constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). This immunity recognizes the "social costs [of litigation against public officials, which] include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Id.* at 814. It represents a defense from suit, not just from liability. *Mitchell,* 472 U.S. at 526. Under the doctrine of qualified immunity, officials are immune unless "the law clearly proscribed the actions" they took. *Id.* Qualified immunity allows "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It shields officials from the "substantial costs" of trial and from "[j]udicial inquiry into subjective motivation." *Harlow,* 457 U.S. at 816-17. And, because a *Bivens* claim is a personal liability claim, Plaintiff must allege personal participation to overcome a qualified immunity defense. *See Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

When Defendants raised qualified immunity, Plaintiff bore a heavy two-part burden to show: (1) each Defendant's actions violated a constitutional right; and (2) the right allegedly violated was clearly established at the time of the conduct. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). For a right to be clearly established, it must be "sufficiently clear that <u>every</u> reasonable official would have understood that what he is doing violates that right" and "existing precedent must have placed the statutory or constitutional question <u>beyond debate</u>." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (quotations omitted; emphasis added). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003). This

inquiry must be conducted under the specific factual context, not as a general proposition. *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009). The Supreme Court "ha[s] repeatedly told courts ... not to define clearly established law at a high level of generality." *al-Kidd,* 563 U.S. at 742 (citation omitted).

## I. THE COURT SHOULD CONSIDER THE MERITS OF THE ARGUMENT ABOUT A LACK OF A *BIVENS* REMEDY AND HOLD THAT NO SUCH REMEDY EXISTS.

### A. The Court Should Reconsider its Decision to not Reach this Argument.

When Defendants filed Objections, they informed the Court that their motion to dismiss had not raised the issue of the lack of *Bivens* remedy: "In light of the *Davis* [*v. Passman*] decision and given the paucity of Plaintiff's allegations for this claim, Defendants did not raise this more nuanced argument about the lack of a *Bivens* remedy with respect to the equal-protection claim in their motion to dismiss. However, given the Tenth Circuit's firm waiver rule ... and that the Court's review of this issue is *de novo*, Defendants raise it here." (Doc. 105 at 14 n.9.) They made a detailed argument on the issue, which closely tracked the argument they had made under the First Amendment. Plaintiff had an opportunity to, and did, respond to the arguments when he responded to the Objections. (*See* Doc. 108 at 13-15.)

The Court declined to address this fully briefed issue because it was raised for the first time in Defendants' objections. (Doc. 111 at 16.) However, because the Recommendation concerned a dispositive motion, the Court was required to determine *de novo* any part of the Recommendation to which Defendants objected. Fed. R. Civ. P. 72(b)(3). Moreover, Rule 72 allows a district court to "receive further evidence," thereby contemplating that a court may consider matters not before a Magistrate Judge. *Id.* Further, while there are cases holding that an argument not presented to a Magistrate Judge is waived, many of those cases involve social security appeals with an extensive administrative record, including *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996), which is often cited as authority for this proposition. *See, e.g.*, *Collins v. Colvin*, 640 F. App'x 698, 700 (10th Cir. 2016).

But Defendants have not found any Tenth Circuit cases[2] finding a waiver in the qualified immunity context. Instead, the Tenth Circuit has held that "[h]aving appropriately pleaded the affirmative defense of qualified immunity, ... [defendant] was entitled to 'establish his right to immunity *at any point in the proceeding*, including at trial.'" *Medina v. Bruning*, 56 F. App'x 454, 454-55 (10th Cir. 2003) (emphasis added). It has also concluded that issues of qualified immunity were not barred by the "firm waiver rule" where a defendant had not objected to an adverse holding in a Recommendation. *Escobar v. Mora*, 496 F. App'x 806, 815 (10th Cir. 2012) (noting "the unique nature of qualified immunity, which serves as an immunity from the burdens of litigation rather than a mere defense to liability, *Serna v. Colo. Dep't of Corr.,* 455 F.3d 1146, 1150 (10th Cir. 2006), and as such should remain available to the defendant at multiple stages of the case, *see, e.g., Cassady v. Goering,* 567 F.3d 628, 634 (10th Cir. 2009); *Weise v. Casper,* 507 F.3d 1260, 1265 (10th Cir. 2007)").

The Tenth Circuit recently confirmed that this Court has discretion to decide this fully briefed and purely legal qualified immunity issue now rather than later. The Tenth Circuit exercised its discretion to decide a qualified immunity issue—whether the law was clearly established—that was not adequately raised for the first time until appeal. *Cox v. Glanz,* 800 F.3d 1231, 1244 (10th Cir. 2015). *Cox* noted three factors weighed in favor of considering the issue:

**First**, the Court noted that even though the defendant had only "vaguely asserted" that the law was not clearly established, the defendant "indisputably *did* present a qualified-immunity defense in his summary-judgment briefing. And this defense *necessarily* included the clearly-established-law question." *Id.* at 1245 (citations omitted). Here, whether a *Bivens* remedy exists at all is a necessary prerequisite for Plaintiff's equal-protection claim, and thus similarly necessarily part of the qualified immunity analysis.

**Second**, *Cox* decided that the qualified immunity question was not forfeited, even though

---

[22] The Tenth Circuit has found qualified immunity arguments to be waived where a defendant did not object to a Magistrate Judge's recommendation on those arguments, *Webb v. Thompson*, 643 F. App'x 718, 722-23 (10th Cir. 2016), *cert. dismissed*, 2016 WL 3486667 (Oct. 3, 2016), but that is not the case here.

neither side presented thorough briefing on the issue. *Id.* at 1244, 46 (describing defendant's briefing as "assuredly not robust" and plaintiff's as "anemic"). Nevertheless, the importance of the qualified immunity defense weighed in favor of finding that the argument was not forfeited. *Id.* at 1245 (asserting qualified immunity "triggered a well-settled twofold burden that [plaintiff] was compelled to shoulder," *i.e.*, "to rebut the [defendant]'s no-constitutional-violation arguments," and "to demonstrate that any constitutional violation was grounded in then-extant clearly established law"). Here, the critical issue—the availability of a *Bivens* remedy—has been thoroughly briefed. The issue was briefed in the First Amendment context and then briefed in the Objections on the Fifth Amendment claim. And showing that a *Bivens* remedy exists in the first place is a necessary prerequisite to the claim.

**Third**, *Cox* reached the qualified immunity issue because it was purely legal in nature. The Tenth Circuit found that it "can entertain a defendant's argument on the clearly-established-law prong under certain circumstances, even if the argument had been forfeited in district court, because the issue involves a pure matter of law. Specifically, our discretion allows us to determine an issue raised for the first time on appeal if it is a pure matter of law and its proper resolution is certain." 800 F.3d at 1246 n.7 (citations and punctuation omitted). Here, too, the threshold issue of whether a *Bivens* remedy exists is purely legal in nature and resolution of this issue is straightforward because neither the Tenth Circuit nor the Supreme Court has recognized such a remedy in this specific context.

Based on this Tenth Circuit authority, Defendants respectfully submit that the Court should reconsider its decision that this issue is waived, especially in the context of qualified immunity, which should be determined at the earliest stages of litigation and where Plaintiff bears a heavy pleading burden. The question is a purely legal one and has been fully briefed.

There is yet another reason for the Court to reconsider whether to address the lack of a *Bivens* remedy here. Since the time that the parties briefed their Objections, the Supreme Court granted certiorari in the consolidated cases of *Ashcroft, et al. v. Turkman*, Nos. 15-1358, 15-1359, 15-1363, including

6

on the following issue, which involves both due process and equal-protection Fifth Amendment claims:

> Whether the judicially inferred damages remedy under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), should be extended to the novel context of this case, which seeks to hold the former Attorney General and Director of the Federal Bureau of Investigation (FBI) personally liable for policy decisions made about national security and immigration in the aftermath of the September 11, 2001 terrorist attacks.

https://www.supremecourt.gov/qp/15-01359qp.pdf (Oct. 11, 2016).

Finally, even if the Court were to find that this argument was forfeited for a motion to dismiss, it is not waived for the entire case. Defendants have raised this defense in their answer. They intend to raise it in a Rule 12(c) or Rule 56 motion and again at trial, if necessary. The interests of judicial economy and purposes of Fed. R. Civ. P. 1 of "secur[ing] a just, speedy, and inexpensive determination" of claims and defenses would be best served by addressing the issue now, before discovery commences, before a potential interlocutory appeal, or before it is raised by other dispositive motions.

### B. The Court Should not Imply a *Bivens* Remedy for this Equal Protection Claim.

The Court should not imply a *Bivens* remedy under the Equal Protection Clause in the specific context here. Since *Bivens*, which allowed an action for damages under the Fourth Amendment, the Supreme Court has recognized such a remedy in only two types of cases: violations of the Eighth Amendment's Cruel and Unusual Punishment Clause, *see Carlson v. Green*, 446 U.S. 14 (1980), and violations of the equal-protection component of the Fifth Amendment's Due Process Clause <u>in an employment context</u>, *see Davis v. Passman*, 442 U.S. 228 (1979).

The Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). "[C]ontext" does not simply mean categories of constitutional claims because, "[a]t a sufficiently high level of generality, any claim can be analogized to some other claim for which a *Bivens* action is afforded." *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009) (en banc). Rather, "context" means a "recurring scenario that has similar <u>legal and factual</u> components." *Id.* (emphasis added). Accordingly, in *Bush v. Lucas*, 462 U.S. 367, 390

7

(1983), the Supreme Court refused to recognize a *Bivens* cause of action in the First Amendment context. In *Malesko*, the Supreme Court rejected a *Bivens* remedy in the context of procedural due process, because injunctive relief is the proper remedy for that type of constitutional violation. 534 U.S. at 74. In *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007), the Supreme Court refused to recognize a *Bivens* remedy for Fifth Amendment takings. *See also id.* at 550 (no *Bivens* claim for "harm to military personnel through activity incident to service" or "wrongful denials of Social Security disability benefits"); *FDIC v. Meyer*, 510 U.S. 471 (1994) (same against federal agency); *Malesko*, 534 U.S. at 68 (same against private prison).

The Supreme Court reached a different result in *Davis* because that situation was unique. The Court allowed a *Bivens* equal-protection claim to proceed in an employment case, but that context was special because the plaintiff, who worked for Congress, could not pursue claims under Title VII. 442 U.S. at 247. Notably, when Navy enlisted men brought employment-discrimination claims in *Chappell v. Wallace*, the Court found that was a new context and refused to extend *Bivens* given the "special status of the military." 462 U.S. 296, 302-05 (1983).

Here, neither of the questions the Court must consider to decide whether a *Bivens* remedy exists favors implying such a remedy for an equal-protection violation for allegedly discriminatory enforcement based on religion. First, Plaintiff has alternative, existing remedies and established procedures to protect the interests, *see Wilkie*, 551 U.S. at 550, each of which he has pursued here: injunctive relief against BOP, *see Malesko*, 534 U.S. at 74; a remedy through BOP's grievance system, *see* 28 C.F.R. pt. 542; and an alternative statutory remedy available under RFRA. Thus, "there is no reason to rely on a court-created remedy, like *Bivens*, when Congress has created an adequate means for obtaining legal redress." *Simmat v. U.S. Bur. of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005).

Second, weighing the "reasons for and against the creation of a new cause of action, the way common law judges have always done," considering, for instance, the "inadequacy of discrete … remedies," *Wilkie*, 551 U.S. at 554, does not favor the creation of a *Bivens* remedy. As Plaintiff

8

recognized, "it is inconsistent to conclude that a *Bivens* remedy is available under the Fifth Amendment, but not the First Amendment, when the same type of 'alternative' remedies are available under both claims —*i.e.*, … both injunctive relief and damages." (Doc. 101 at 10 n.15.)  However, the law supports the opposite conclusion to the one Plaintiff advocated:  there should *not* be a *Bivens* remedy under the Fifth Amendment either.  The Supreme Court has not established a *Bivens* remedy for equal-protection claims in the prison context at all, much less one based on an alleged discriminatory enforcement of a religion-neutral policy against group prayer at the nation's most secure federal prison.  The Court should decline to create a remedy here.

## II.     THE COURT SHOULD CONCLUDE THAT DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON CLAIM FOUR.

### A.     Defendants Have Qualified Immunity Because Plaintiff Failed to State a Claim.

Defendants explained the standard of review under *Iqbal* in their motion to dismiss and Objections, which are incorporated here by reference.  Of particular relevance here, allegations that are compatible with lawful behavior do not plausibly suggest an entitlement to relief.  *Iqbal*, 556 U.S. at 679-80.  Mere allegations of misconduct are insufficient because it is not enough to "tender[] naked assertion[s] devoid of further factual enhancement."  *Id.* at 678 (punctuation omitted).

An equal-protection violation occurs where someone is treated differently than another who is "similarly situated."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Equal-protection claims based on "suspect classifications" such as religion "are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest."  *Id.* at 440.

In order to plausibly allege that another inmate is "similarly situated" to him, an inmate must allege facts showing a high degree of similarity between him and a specifically-identified comparator such that the inmate with whom he compares himself is similar to him "in every relevant respect." *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  Even "slight differences in [inmates'] histories" make them not "similarly situated" for purposes of an equal-protection claim.  *Id.*  Finally, Plaintiff must

allege facts showing that Defendants acted with an intent to discriminate. *Iqbal*, 556 U.S. at 676 ("Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose."); *Watson v. City of Kan. City, Kan.,* 857 F.2d 690, 694 (10th Cir.1988) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent" and must "prove that a discriminatory purpose was a motivating factor.").

Here, Plaintiff alleged no facts to show that he was similarly situated to other inmates who were treated differently. Both the Recommendation (Doc. 97 at 61) and this Court addressed the "similarly situated" requirement only as to the official-capacity claims, while not conducting the analysis in the context of the individual-capacity claims. After omitting that analysis, the Recommendation erroneously found that Plaintiff was not required "to identify these similarly situated individuals with more specificity," (*id.* at 40) by relying on *Tennyson v. Carpenter*, 558 F. App'x 813, 819-20 (10th Cir. 2014), which the Court adopted without additional analysis. (Doc. 111 at 16). But *Tennyson* does not support the Court's conclusion. The Tenth Circuit held that where a plaintiff alleged discrimination based on a fundamental right or suspect classification, strict scrutiny applied, and "it was not necessary for him to allege further that his different treatment <u>was not reasonably related to a legitimate penological purpose</u>," 558 F. App'x at 820 (emphasis added); the court never held that the inmate was not required to allege sufficient facts showing other similarly situated inmates were treated differently.[3] The Tenth Circuit has reiterated that the "threshold issue" for every equal-protection claim, even where a fundamental right is allegedly infringed, is the "similarly situated" element, which is met by showing the comparators "<u>are alike in all relevant respects</u>." *Riddle v. Hickenlooper*, 742 F.3d 922, 926 (10th Cir. 2014).

---

[3] This Court has noted many times that even if a plaintiff alleges an infringement of a fundamental right, he still must make the preliminary showing that "similarly situated individuals were treated differently." *E.g.*, *Haines v. Archuleta*, No. 13-cv-01897-PAB-KLM, 2013 WL 6658767, at *5 (D. Colo. Dec. 17, 2013); *Jennings v. Zavaras*, No. 10-cv-01772-BNB, 2010 WL 3885420, at *2 (D. Colo. Sept. 29, 2010); *Wilson v. Zavaras*, No. 10-cv-02374-ZLW-BNB, 2010 WL 4975591, at *2 (D. Colo. Dec. 2, 2010).

Here, Plaintiff failed to identify any comparator inmate, instead asserting that he is similarly situated to classes of inmates of other religions who allegedly are able to pray with their clergy. Nor did he allege that these unidentified inmates are similarly situated in every relevant aspect, such as their underlying criminal charges, history of institutional misconduct, security classifications, or housing assignments. And he ignored the context here—*i.e.*, that there is an ADX-wide ban on congregate prayer that applies to <u>all religions</u>. (*See* Doc. 26-4 at 3 ("All inmates in general population (except for ADX and SMU) are eligible to attend religious programs/services in the institution.").)[4] As is plain from the language, that policy does <u>not</u> discriminate against Muslims or in favor of any other religious group. It applies equally to ban congregate activities of <u>all</u> religious groups. Under these circumstances, "to state a claim based on a violation of a clearly established right, [Plaintiff] must plead sufficient factual matter to show that [Defendants] adopted and implemented the ... policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of ... religion." *Iqbal*, 556 U.S. at 677. Plaintiff alleged no facts remotely meeting this standard.[5]

Even more significantly, Plaintiff alleged no <u>facts</u> to show that each Defendant acted with a discriminatory purpose. He did not "plead sufficient factual matter to show that [Defendants] adopted and implemented the ... policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of ... religion." *Id.* Nor did he allege specific <u>facts</u> to show how each Defendant selectively enforced the policy against him but not inmates of other religions. Although the

---

[4] While the Court construed Plaintiff's claim as demanding "informal group prayer" and not "formal congregate *services*" (Doc. 111 at 17-18) (emphasis in original), Plaintiff actually pleaded that he seeks Ju'mah, which he defines as "congregational prayer … similar to the Saturday *services* of the Jewish faith, or Sunday *services* of the Christian faith." (Doc. 29 at ¶¶ 298-299) (emphasis added).

[5] Given the religious-neutral nature of the ADX policy, Plaintiff's claim could alternatively be viewed as one that the policy is enforced in a discriminatory manner against Muslims but not against inmates of other religions—but his allegations fall far short of meeting a selective-enforcement claim. "[T]he standard for alleging selective enforcement is a demanding one," and requires a showing of both a discriminatory effect and purpose. *Haskett v. Flanders*, No. 13-cv-3392-RBJ-KLM, 2015 WL 128156, at *6 (D. Colo. Jan. 8, 2015) (citing *Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006)) (report & recommendation adopted). Plaintiff pleaded neither.

11

Court addressed this issue only with respect to the claims against the Bureau (Doc. 111 at 18), the broad allegation that Defendants' "disparate treatment" is based on religion and motivated by discrimination (Doc. 29 ¶ 413) is plainly insufficient under *Iqbal* to impose <u>personal</u> liability on each Defendant.[6]

### B. Plaintiff Failed to Allege a Violation of a Clearly Established Right.

Plaintiff did not meet his heavy burden to show the right was clearly established under the factual scenario here, *see Bowling*, 584 F.3d at 964, such that it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right," *al-Kidd*, 563 U.S. at 741. The Recommendation improperly defined the right broadly—"whether it was clearly established that Defendants were not permitted to deny equal protection to Plaintiff on the basis of his religion" (Doc. 97 at 62)—which the Court accepted without further analysis (Doc. 111 at 16). But the Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality." *al-Kidd,* 563 U.S. at 742; *see Mullenix v. Luna,* 136 S. Ct. 305, 308 (2015) (quoting *id.*). For example, "[t]he general proposition ... that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (noting with disapproval appellate court's "brief discussion of qualified immunity consisted of little more than an assertion that a general right [defendant] was alleged to have violated ... was clearly established"); *Callahan v. Unified Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1027-28 (10th Cir. 2015) ("Plaintiffs and the district court confounded this inquiry by engaging in generic, overbroad, and conclusory analyses on the question of clearly established law. Presenting the issue so broadly is at odds with the Supreme Court's consistent admonishment 'not to define clearly established law at a high level of generality.'"); *Cox*, 800 F.3d at 1246 n.6 (citing *al-Kidd*).

Thus, the right should be defined precisely in this specific context—*i.e.*, whether a ban on

---

[6] Moreover, given the generalities alleged, the "cursory equal-protection claim 'is nothing more than a rephrasing of [Plaintiff's] free-exercise claim.'" *Williams v. Wilkinson*, 645 F. App'x 692, 708 n.18 (10th Cir. 2016) (quoting *Prince v. Mass.,* 321 U.S. 158, 170 (1944)).

12

congregate prayer at the most secure federal prison violates the Constitution, when applied to a terrorist who engaged in misconduct during group-prayer activities at another institution. Because no case law in this Circuit so holds, no law put *every* reasonable officer on notice that he was acting unlawfully.

### C. Plaintiff Failed to Allege Facts showing Defendants' Personal Participation.

Plaintiff did not allege sufficient facts to show the personal participation by each *Bivens* Defendant relating to the alleged prohibition on group prayer. He must allege facts showing actual and personal participation in the unconstitutional conduct by each defendant. *Brown*, 662 F.3d at 1163; *Ajaj v. Fed. Bur. of Prisons*, No. 08-cv-2006-MSK-MJW, 2011 WL 902440, *4 (D. Colo. 2011), *aff'd*, 561 F. App'x 657 (10th Cir. 2014). This requires allegations showing "exactly *who* is alleged to have done *what* to *whom*." *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008). This inquiry focuses on what is alleged about <u>the particular Defendants</u>. *See Iqbal,* 556 U.S. at 669 ("The allegations against petitioners are the only ones relevant here."). Neither "passive-voice" allegations that an individual's rights were violated, nor "active-voice" allegations that undifferentiated defendants did so, state a claim under *Bivens. Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013). Nor does referring to Defendants collectively state a claim. *See*, *e.g.*, *id.*; *Brown*, 662 F.3d at 1165 ("[i]t is not enough for the Complaint to lump the four named defendants and presumably the 1-50 John Does into the collective term 'Defendants' and allege" that they committed a constitutional violation); *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 921 n.9 (10th Cir. 2012) ("Because ... [the] claim and the facts alleged to support that claim use ... the collective term 'Defendants' ... and do not specify what acts are attributable to whom, the individual Defendants cannot be sure what unconstitutional acts they are alleged to have committed."); *Bridges v. Lane*, 351 F. App'x 284, 286 (10th Cir. 2009) ("We are especially critical of complaints that do not articulate specific times, places, or persons involved in the alleged misconduct because such complaints give defendants seeking to respond to plaintiffs' conclusory allegations little idea where to begin.").

The Court should be *"*especially critical" of Plaintiff's complaint because it "do[es] not articulate

13

specific times, places, or persons involved in the alleged misconduct." *Id.*  Once the Court "eliminates all 'allegations in the complaint that are not entitled to the assumption of truth,'" *Vega*, 572 F. App'x at 618 (quoting *Iqbal*, 556 U.S. at 680), nothing remains with respect to the equal-protection claim.

**Berkebile, Oliver, Hall, Knox, and Parry**:  Plaintiff lumps these Defendants together, alleging that collectively they "reminded" and "threatened [Plaintiff] and other Muslim inmates with disciplinary action if they perform" group prayer.  (Doc. 29 ¶¶ 305, 306.)  <u>Significantly, these are the **only** allegations that specifically mention Wardens Berkebile and Oliver and Associate Warden Hall in connection with this claim</u>.  But there is no supporting factual content for these allegations, such as when or where these alleged threats occurred, what the threats were, or the identities of the other Muslim inmates.  Nor does Plaintiff provide facts sufficient to infer, in light of the institution-wide policy against group congregation, that each Defendant impermissibly singled out Plaintiff.  The Recommendation recognized these allegations "could have been more specific," but nevertheless found that they were adequate to establish personal participation.  (Doc. 97 at 61-62).  But these allegations do *not* satisfy *Iqbal*, which requires specific, non-conclusory allegations that show exactly who did what to whom.

**Knox**:  Plaintiff also claims Knox told Plaintiff he should know that he was not permitted to engage in group prayer and that the rationale was security concerns.  (Doc. 29 ¶¶ 311-12.)  These statements do not lead to any possible conclusion that Knox personally participated in any unlawful <u>discriminatory</u> conduct or played any role in the adoption or implementation of any unlawful policy.

**Parry**:  Parry allegedly threatened disciplinary action against other Muslim prisoners who attempt to engage in group prayer and "goes so far as to place Muslim prisoners in the SHU who attempt the call to prayer."  (*Id.* ¶ 308.)  No factual content is provided for these allegations, which do not show Parry personally participated in a violation of <u>Plaintiff's</u> equal-protection rights in any case.

These conclusory allegations, which do not show who is alleged to have done what to whom, fall far short of meeting Plaintiff's heavy burden to show personal participation and overcome the qualified

14

immunity defense.  His equal-protection claim seems to hinge on the conclusory allegation that someone—he does not say who—has sometimes allowed other unidentified inmates to pray with clergy (*Id.* ¶ 313).  But he has not alleged with any degree of specificity what allegedly unconstitutional conduct occurred, when, and by whom, or which Defendant, if any, actually discriminated against Plaintiff.  Indeed, the alleged acts are compatible with lawful behavior.  *See Iqbal*, 556 U.S. at 679-80.

Even more significantly, there are no specific facts plausibly showing discriminatory intent by each Defendant.  Plaintiff simply surmised that his alleged disparate treatment was motivated by discrimination.  (Doc. 29 ¶ 413.)  *Iqbal* makes clear that such conclusory allegations fail.  556 U.S. at 676 ("Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, … the plaintiff must plead and prove that the defendant acted with discriminatory purpose."); *id.* at 680-81 (allegations that defendant "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin," and that he was the "principal architect" of the policy, were "bare assertions" that were "nothing more than a formulaic recitation of the elements").

The Court did not analyze the absence of discrimination intent in connection with the *Bivens* claims.  It should do so now, and conclude that Plaintiff has not met his pleading burden on this issue.

## CONCLUSION

For these reasons, the Individual Defendants respectfully request that the Court grant this motion and find that they are entitled to qualified immunity on Claim Four.

DATED November 21, 2016.　　　ROBERT C. TROYER
　　　　　　　　　　　　　　　　Acting United States Attorney

　　　　　　　　　　　　　　　　s/ *Amy L. Padden*
　　　　　　　　　　　　　　　　Amy L. Padden
　　　　　　　　　　　　　　　　Acting Executive Assistant United States Attorney
　　　　　　　　　　　　　　　　s/ *Susan Prose*
　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　1225 Seventeenth Street, Suite 700
　　　　　　　　　　　　　　　　Denver, CO  80202
　　　　　　　　　　　　　　　　Tel: (303) 454-0100; e-mail: amy.padden@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on November 21, 2016, I filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

lfontana@law.du.edu
lwebb@law.du.edu
ngodfrey@law.du.edu

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the nonparticipant's name:

*s/ Susan Prose*
United States Attorney's Office