IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-00992-RBJ-KLM

AHMAD AJAJ,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS;
WARDEN JOHN OLIVER, in his individual capacity;
WARDEN DAVID BERKEBILE, in his individual capacity;
ASSOCIATE WARDEN TARA HALL, in her individual capacity;
RELIGIOUS COUNSELOR GEORGE KNOX, in his individual capacity; and
OFFICER D. PARRY, in his individual capacity,

    Defendants.

## ORDER

This matter is before the Court on plaintiff's and individual defendants' motions to reconsider portions of the Court's prior order adopting Magistrate Judge Kristen L. Mix's recommendation, see ECF No. 111.[1] *See* ECF No. 117 (plaintiff's motion); ECF No. 116 (defendants' motion). For the reasons below, the Court DENIES plaintiff's motion but GRANTS defendants' motion.

### I. BACKGROUND

The background of this dispute has been extensively addressed. *See, e.g.*, ECF No. 97 at 2–9; ECF No. 111 at 2–3. Stated again briefly, this case involves a lawsuit filed on May 11, 2015 by Ahmad Ajaj, a Muslim inmate at the Administrative Maximum Facility ("ADX") in

---

[1] The Court will refer to the "individual defendants" in this Order simply as "defendants" unless it is distinguishing them from the other current or former defendants in this action.

Florence, Colorado. Mr. Ajaj originally filed this lawsuit purely as a means to compel the government to administer to him his medications before sunrise and after sunset during the Islamic holy month of Ramadan. *See* ECF No. 1. However, in his amended complaint Mr. Ajaj greatly expanded the scope of this action. *See* ECF No. 29. He alleged that the Federal Bureau of Prisons ("BOP") and numerous of its employees had violated his First Amendment rights in several additional ways, as well as his Fifth Amendment right to equal protection and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb. *Id.* He also added a claim under the Federal Tort Claims Act ("FTCA") against the United States. *Id.*

On February 10, 2016 defendant BOP, defendant United States, and the individual named defendants filed separate motions to dismiss Mr. Ajaj's amended complaint. ECF Nos. 63, 64, 65. The Court subsequently referred these motions to Magistrate Judge Kristen L. Mix. ECF No. 82. On August 30, 2016 Magistrate Judge Mix recommended in a sixty-four-page order that this Court grant the United States' motion, and grant in and part and deny in part the remaining two motions to dismiss. ECF No. 97. After *de novo* review, the Court adopted in full Magistrate Judge Mix's recommendations on October 25, 2016. *See* ECF No. 111. The Court accordingly dismissed plaintiff's First Amendment claims for damages against the individual BOP employees, his First Amendment claim for an injunction against the BOP based on his original Ramadan allegation, his RFRA claims for damages, and his FTCA claim against the United States.[2]

On November 21, 2016 both plaintiff and the remaining individual defendants filed motions for partial reconsideration of the Court's order adopting in full Magistrate Judge Mix's recommendations. ECF Nos. 116, 117. These motions have been fully briefed.

---

[2] The United States was subsequently dismissed from this lawsuit, as were numerous individual named defendants aside from those named in the caption above. *See* ECF No. 111.

2

## II. ANALYSIS

After reviewing the parties' motions, the Court finds that it did not err when it dismissed plaintiff's First Amendment claims for damages, but that the Court erred when it held that defendants had waived their argument that plaintiff has no Fifth Amendment cause of action for damages. Reaching that argument now, the Court grants defendants' motion to dismiss those claims.[3] I discuss plaintiff's motion for partial reconsideration first, followed by defendants' motion.

### A. Plaintiff's Motion for Partial Reconsideration.

Mr. Ajaj's motion for partial reconsideration is "narrow." ECF No. 117 at 2. He asks this Court to reconsider its dismissal of only two of his implied claims for damages under the First Amendment against the individual defendants—i.e. two of plaintiff's First Amendment "*Bivens*" claims, see *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397(1971). These include: (1) his claim premised on the BOP officials' alleged failures to administer to Mr. Ajaj his medications at certain times so that he can maintain his Ramadan fast; and (2) his related claim concerning his medications and Sunnah fasts.[4] *See* ECF No. 117 at 2. However, because I find that the Court did not err in finding that plaintiff has adequate alternative avenues to redress these alleged wrongs and that, in any event, special factors counsel against recognizing these novel claims, plaintiff's motion is denied. *See, e.g.*, *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 860 (10th Cir. 2015) (explaining this "two-step analytical framework").

---

[3] As the Court explained in its prior order, plaintiff maintains two Fifth Amendment claims for damages against the individual defendant—one based on their alleged failure to provide access to an Imam, and one based on their alleged failure to allow Muslim inmates to conduct group prayer. *See* ECF No. 111 at 14.

[4] In its prior order, the Court combined these claims into one. *See* ECF No. 111 at 5. Here, for ease of analysis, the Court refers to these claims separately.

1. **<u>Mr. Ajaj has Alternative Remedies for his First Amendment Fasting Claims for Damages.</u>**

Plaintiff's first argument for reconsideration is that the Court erred by suggesting that his Fifth Amendment *Bivens* claims (contained within Count IV of the amended complaint) were "adequate alternatives" that precluded recognizing the two First Amendment *Bivens* claims mentioned above (contained within Count I). *See* ECF No. 117 at 3–4. He points out that since his Fifth Amendment claims do not include these fasting-based factual allegations, that they are not adequate substitutes to redress those alleged wrongs. *See id.* On this narrow point, the Court agrees: plaintiff's Fifth Amendment *Bivens* claims are not adequate alternatives for these specific factual allegations because his Fifth Amendment claims do not appear to contain them, but more importantly because the Court now dismisses those Fifth Amendment claims as well, see *infra* Part II.B.

Nevertheless, I find that plaintiff's motion must still be denied because he retains other adequate alternatives besides those Fifth Amendment claims to redress these alleged First Amendment wrongs. Although the Court did not reference these alternatives specifically by name in its prior order, it incorporated Magistrate Judge Mix's recommendation that explained them well and at great length.[5] To briefly summarize two of them, they include: (1) filing a grievance as part of the BOP's administrative remedy program; and (2) filing a lawsuit for injunctive relief.[6] *See* ECF No. 97 at 43–45; 28 C.F.R. § 542.10(a) (the BOP's administrative remedy program); *K.B. v. Perez*, No. 16-1155, 2016 WL 7030320, at *2 (10th Cir. Dec. 2, 2016) (recognizing these two alternatives as "adequate" and precluding the creation of a *Bivens* claim

---

[5] In her extensive and well-researched recommendation, which the Court reminds plaintiff it incorporated in its prior order and adopted *in full*, Magistrate Judge Mix also noted numerous other persuasive reasons why the Court should refrain from recognizing these novel claims. *See* ECF No. 97 at 41–50.

[6] Plaintiff has availed himself of both alternative remedies. *See, e.g.*, ECF No. 29 at ¶¶ 199, 212, 273, 282.

premised on alleged First or Fifth Amendment violations); *accord Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (noting that inmates at private prisons, like those at BOP facilities, "have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program (ARP)," and that injunctive relief and the BOP's "program provide[] . . . means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring.").

Mr. Ajaj nonetheless highlights the Tenth Circuit's recent decision in *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853 (10th Cir. 2016) and its earlier decision in *Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009), arguing that the Tenth Circuit does not consider either of these two alternatives adequate.[7] I'm not convinced. Neither of these decisions analyzed in any depth the adequacy of an injunction or the BOP's alternative remedy program as alternatives to *Bivens* liability. Instead, they primarily concerned the adequacy of the Animal Welfare Act and the Inmate Accident Compensation Act as alternative remedial mechanisms to redress alleged Fourth Amendment and Eighth Amendment violations respectively. *See, e.g.*, *Big Cats*, 843 F.3d at 862; *Smith*, 561 F.3d at 1099. Neither statute or Amendment is at issue here.

Furthermore, that these cases concerned alleged violations of the Fourth and Eighth Amendments further undermines plaintiff's argument. The Fourth and Eighth amendments are the "core" of *Bivens*, which is a doctrine the Tenth Circuit in *Big Cats* expressly acknowledged the Supreme Court has consistently refused to expand since recognizing those applications and a few other limited ones dissimilar to the claims plaintiff asserts here. *See Big Cats*, 843 F.3d at

---

[7] Plaintiff contends that the Tenth Circuit's unpublished opinion in *K.B. v. Perez*, No. 16-1155, 2016 WL 7030320, at *2 (10th Cir. Dec. 2, 2016), which defendants rely on as evidence that the Tenth Circuit *does* consider these alternatives adequate, see ECF No. 120, is unpersuasive in light of these published circuit decisions, see ECF No. 131. As described *infra*, I find that argument unconvincing.

5

858 ("[T]he Court has steadfastly retreated from a broad application of the doctrine, refusing to extend implied causes of action to other constitutional provisions, and cabining the contexts in which it will allow *Bivens* claims to proceed."). By contrast, plaintiff's First Amendment *Bivens* claims are novel. *See, e.g*, *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[W]e have not found an implied damages remedy under the Free Exercise Clause. Indeed, we have declined to extend *Bivens* to a claim sounding in the First Amendment."). Thus, the very claims underlying *Smith* and *Big Cat* render those decisions inapposite. *See Malesko*, 534 U.S. at 68 (noting that the Court has refused to "extend *Bivens* liability *to any new context* or new category of defendants" since 1980) (emphasis added).

Finally, *Smith* and *Big Cats* are unconvincing because their omitted analysis about whether injunctive relief and the BOP's administrative remedy program are adequate alternative remedies is not difficult to resolve against creating a *Bivens* remedy. The Supreme Court in *Malesko* described it well. Explaining that these remedies were available to private prison inmate-plaintiffs as well as to inmates in BOP-run facilities, the Court noted that these remedies "provide[] . . . [a] means through which allegedly unconstitutional actions and policies [by BOP officials] can be brought to the attention of the BOP and prevented from recurring."[8] *Malesko*, 534 U.S. at 74; *see also* 28 C.F.R. § 542.10(a); *Koprowski v. Baker*, 822 F.3d 248, 268 (6th Cir. 2016) (Sutton, J. dissenting). Thus, the Court explained, these remedies are "adequate" because they accomplish the very objective that originally led the Court to establish the *Bivens* doctrine

---

[8] As the Supreme Court has also noted, in deciding whether an alternative remedial mechanism is "adequate," courts need not decide whether they are explicitly or implicitly designated as replacements, nor whether they are equally effective as a *Bivens* remedy might be. *See, e.g.*, *Minneci v. Pollard*, 132 S. Ct.617, 623–25 (2012). They also need not compensate a plaintiff with monetary damages in order to be adequate alternatives. *Big Cats*, 843 F.3d at 863.

in the first place: deterring unconstitutional behavior by government officials.[9] *See, e.g.*, *Malesko*, 534 U.S. at 70 ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."). All of plaintiff's First Amendment claims for damages were therefore properly dismissed.

### 2. The "Mootness" of One of Plainitff's Related Claims for Injunctive Relief does not Warrant the Creation of a *Bivens* remedy.

Plaintiff next contends that because the Court dismissed as "moot" his claim for injunctive relief against the BOP based its Ramadan pill administration, that his *Bivens* claim based on that same allegation has no alternative remedial mechanism. ECF No. 117 at 5–7. He therefore argues that his *Bivens* claim must be allowed to proceed because it is his only remedy to redress that alleged wrong. *Id.*

Again, I am not convinced. As mentioned above, regardless of whether plaintiff could file a claim for injunctive relief, he has the adequate alternative remedy of the BOP's administrative remedy program to redress that alleged First Amendment violation. *See supra* Part II.A.1; *see also* ECF No. 97 at 41–50 (explaining the additional reasons counseling against recognizing these claims, which the Court adopted in full). Furthermore, because the Court found that plaintiff's claim for an injunction was moot (due to the BOP's revision of its pill line procedures to accommodate Muslim inmates' Ramadan fasts), plaintiff has not only already received the relief he desires, but he also retains the ability to re-file his claim for an injunction should the BOP make this controversy "live" again.

---

[9] To the extent plaintiff argues that his injunctive relief is inadequate because it targets BOP as an entity and not the individual BOP officials carrying out the policy, I note that plaintiff voluntarily dismissed his official capacity claims for injunctive relief against the individual BOP defendants. *See* ECF No. 71 at 4 n.4.

Thus, for inmates in plaintiff's shoes, it is not "damages or nothing." *See Bivens*, 403 U.S. at 410 (Harlan, J. concurring). Far from it.[10] *Cf. id.* ("It will be a rare case indeed in which an individual in Bivens' position will be able to obviate the harm by securing injunctive relief from any court" because *unknown* federal agents stormed his apartment *unannounced*); *Davis v. Passman*, 442 U.S. 228, 245 (1979) ("Moreover since respondent is no longer a Congressman . . . equitable relief in the form of reinstatement would be unavailing. And there are available no other alternative forms of judicial relief.").

### 3. "Special Factors" Likewise Warranted Dismissal.

Finally, as the Court noted in its prior order, plaintiff's motion for reconsideration must also be denied because "special factors" counsel hesitation before recognizing plaintiff's First Amendment *Bivens* claims. *See Big Cats*, 843 F.3d at 860 (citing *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)); ECF No. 97 at 49–50 (explaining in great detail these special factors); ECF No. 111 at 6 (incorporating and adopting Magistrate Judge Mix's analysis on this point).

---

[10] To the extent that Mr. Ajaj contends the *Bivens* doctrine requires that he have a *judicial* vehicle as an alternate mechanism to redress any alleged wrongs, I note that there is no such requirement. *See, e.g.*, *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (refusing to create a *Bivens* remedy for a naval service members because "[a]ny action to provide a judicial response . . . would be plainly inconsistent with Congress' authority in this field."). Moreover, it has come to the Court's attention that in the course of his argument, plaintiff appears to argue that an alternative remedy for a *Bivens* claim is only "adequate" if it affords monetary relief for the past harm allegedly suffered. This misconstrues the law. *See Koprowski v. Baker*, 822 F.3d 248, 267 (6th Cir. 2016) (Sutton, J. dissenting) ("But the key implication of an alternative remedial scheme is that the pros and cons of that regime suffice from Congress's perspective, not necessarily the litigant's perspective."). A *Bivens* claim extracts money from individual government officials as a means of preventing or deterring a constitutional harm from reoccurring. *See Malesko*, 534 U.S. at 70. Whether an alternative remedy is "adequate" is therefore a question of whether that remedy can prevent the constitutional harm of which the plaintiff complains. A *Bivens* a claim is therefore not a claim to obtain money for money's sake. *See Big Cats*, 2016 WL 7187301, at *7 ("[T]here is no need for congruent remedies *or even money damages* to deny a *Bivens* remedy[.]"). *See also Koprowski*, 822 F.3d at 267–68 (Sutton, J. dissenting) ("On several occasions, the Court has held that a *Bivens* action was precluded by remedies that made 'no provision for . . . money damages against officials responsible for unconstitutional conduct.'") (citing *Schweiker v. Chilicky*, 487 U.S. 412 424 (1988); *Bush v. Lucas*, 462 U.S. 367, 388 (1983)).

Plaintiff nevertheless argues that because the Supreme Court has previously expressed doubt about one of these special factors that the Court chose to reference in its prior order—deference to prison administrators, see *Carlson*, 446 U.S. at 19—that the Court's prior order was made in error. [11]

Plaintiff's argument misses the forest for the trees. Regardless of whether or not he is correct that deference to prison officials does not count as a "special factor" in any and all inmate-plaintiff circumstances, the Tenth Circuit has recently and explicitly acknowledged that a separate "special factor" counseling hesitation is that "extending *Bivens* would be contrary to the strong trend of limiting its reach." *K.B.*, 2016 WL 7030320, at *2 (citing *Minneci v. Pollard*, 132 S. Ct. 617, 622 (2012); *Malesko*, 534 U.S. at 74). That is exactly what plaintiff seeks to do here. *See supra*. The Court therefore rightly dismissed his claims for that reason alone. [12]

Furthermore, as Magistrate Judge Mix similarly noted, see ECF No. 97 at 50; ECF No. 111 at 6, the Supreme Court has acknowledged that fears concerning an "onslaught of litigation" counsel against expanding *Bivens*, see *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007) (reasoning that "Congress is in a far better position than a court to evaluate the impact of a new species of litigation" and that "Congress can tailor any remedy to the problem perceived, thus lessening the risk of raising a tide of suits threatening legitimate initiative on the part of the Government's employees"). The Tenth Circuit has echoed these concerns in a related context. *K.B.*, 2016 WL

---

[11] Plaintiff's arguments on whether or not "special factors" counsel hesitation assumes that he has no alternative remedies available to him. *See* ECF No. 117 at 7–8. Because plaintiff does have alternative remedies, see *supra*, his arguments on this point are additionally unavailing.

[12] As an unpublished decision, *K.B.* is not precedent but may be cited for its persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). Furthermore, it is important to point out that the two published Tenth Circuit cases on which plaintiff predominately relies—*Big Cats* and *Smith*—did not analyze this "special factor" because those cases mainly concerned alleged Constitutional violations that would *not* have "extended" *Bivens*. *See Big Cats*, 843 F.3d at 856 (Fourth Amendment); *Smith*, 561 F.3d at 1099 (Eighth Amendment).

7030320 at *2 ("Moreover, [expanding *Bivens*] could lead to unintended, unpredictable, and far-reaching consequences, including inviting a wide range of actions by family members of prisoners. Should Congress wish to confer the right to bring such actions, it has the authority to do so; but we decline to imply a cause of action of such potentially broad scope under these circumstances.").

For all of the reasons discussed above, the Court properly dismissed plaintiff's novel First Amendment *Bivens* claims. Plaintiff's motion for partial reconsideration is accordingly denied.

### B. Individual Defendants' Motion for Reconsideration.

The Court next turns to defendants' motion for partial reconsideration. *See* ECF No. 116. Defendants argue that the Court erred when it refused to dismiss plaintiff's Fifth Amendment equal protection *Bivens* claims. *Id.* Specifically, they ask this Court to reconsider its decision not to reach the merits of their argument for dismissal—raised for the first time in their objection to Magistrate Judge Mix's recommendation—that the Court should not recognize these Fifth Amendment *Bivens* remedies in this novel context. *Id.* at 4–9. In the alternative, they ask the Court to reconsider its refusal to grant defendants' motion to dismiss based on qualified immunity. *Id.* at 9–15. I find defendants' first argument for reconsideration persuasive.

Like the issue of qualified immunity, the lack of a *Bivens* remedy is a purely legal issue concerning the ability of a plaintiff to state a claim. *See K.B.*, 2016 WL 7030320 at *2 (not reaching the issue of qualified immunity after finding that the plaintiff had no *Bivens* remedy); *see also Big Cats*, 843 F.3d at 856 (noting that "whether a *Bivens* remedy exists . . . [is] sufficiently implicated by the qualified immunity defense"). While the Tenth Circuit does not appear to have addressed whether and to what extent defendants waive an argument on this point, the Tenth Circuit has instructed that a defendant can raise the affirmative defense of

qualified immunity at virtually any time. *See, e.g.*, *Escobar v. Mora*, 496 F. App'x 806, 815 (10th Cir. 2012) (explaining "the unique nature of qualified immunity, which serves as an immunity from the burdens of litigation rather than a mere defense to liability . . . should remain available to the defendant at multiple stages of the case") (citations omitted).

In my prior order, I relied on Tenth Circuit precedent regarding the waiver of arguments *generally* in the Magistrate Judge recommendation-context to find that defendants had waived their "no *Bivens* remedy" argument. *See* ECF No. 111 at 16 (citing *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001)). However, given the Tenth Circuit's permissive allowance of arguments on the related issue of qualified immunity, I now realize that finding was in error. Accordingly, I now conclude that defendants did not waive their argument about a lack of *Bivens* remedy by asserting it for the first time in their objection to Magistrate Judge Mix's recommendation.[13] *See also Saucier v. Katz*, 533 U.S. 194, 200, 121 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."); *Williams v. McNeil*, 557 F.3d 1287, 1290 (11th Cir. 2009) ("[A] district court does not abuse its discretion by considering an argument that was not presented to the magistrate judge.").

Reaching defendants' argument on this point now, I find that for the same reasons the Court refuses to recognize plaintiff's First Amendment *Bivens* claims, it must also refuse plaintiff's invitation to create these novel Fifth Amendment equal protection *Bivens* claims.[14]

---

[13] That the Supreme Court has been unwavering in its refusals to expand *Bivens* since 1980 likewise supports allowing defendants to be heard on this point. *See Minneci v. Pollard*, 132 S. Ct. 617, 622 (2012) (collecting cases).

[14] Although the Supreme Court has previously recognized a Fifth Amendment equal protection *Bivens* claim in the employment context, see *Davis v. Passman*, 442 U.S. 228 (1979), plaintiff's Fifth

*See Supra* Part II.A–C (explaining plaintiff's adequate alternatives for redressing the wrongs he alleged suffered and the special factors that counsel against creating new *Bivens* remedies in this particular context).[15] Accordingly, the Court grants defendants' motion for reconsideration and dismisses with prejudice plaintiff's Fifth Amendment claims for damages contained within Count IV of plaintiff's Amended Complaint.

## ORDER

For the reasons above, the Court DENIES plaintiff's motion for reconsideration [ECF No. 117] but GRANTS defendants' motion [ECF No. 116]. Accordingly, the Court dismisses with prejudice plaintiff's Fifth Amendment claims for damages against the remaining individual defendants contained within Count IV of plaintiff's Amended Complaint. With no claims remaining against the individual defendants, the Court dismisses them from this lawsuit.

DATED this 17th day of January, 2017.

BY THE COURT:

*[signature: Brooke Jackson]*

_____
R. Brooke Jackson
United States District Judge

---

Amendment *Bivens* claims are novel because the context of *Davis* (Congressional employment) is quite different from the context here: allegations by an inmate at a maximum security prison that several BOP employees denied him the right to engage in congregate prayer and meet with an Imam. *See, e.g.*, *Wilson v. Libby*, 498 F. Supp. 2d 74, 86 (D.D.C. 2007) ("*Bivens* actions are not recognized Amendment by Amendment in a wholesale fashion. Rather, they are context-specific."), *aff'd*, 535 F.3d 697 (D.C. Cir. 2008); *see also Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) ("[T]he Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in new contexts.") (Internal quotation marks and citations omitted).

[15] Plaintiff also maintains claims under RFRA as alternative mechanisms to remedy these specific allegations.