IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-00992-RBJ-KLM

AHMAD AJAJ,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS

    Defendant.

---

ORDER

---

This matter is before the Court on several pretrial motions. By this order the Court (1) denies plaintiff's motion for partial summary judgment; (2) grants in part and denies in part defendant's motion for summary judgment; (3) denies plaintiff's motion for reconsideration of an earlier order concerning transporting him to Colorado for trial; (4) denies without prejudice plaintiff's motion to exclude certain expert testimony; and (5) denies plaintiff's motion in limine.

## I. BACKGROUND

The background of this dispute has been extensively addressed. *See, e.g.*, ECF No. 97 at 2–9; ECF No. 111 at 2–3; ECF No. 135 at 1–2. I'll briefly review those facts that are relevant to the motions before the Court. Mr. Ajaj has been in BOP custody for 25 years. He initiated this lawsuit in 2015 while housed at the BOP's ADX facility in Florence, Colorado. In January 2018, BOP transferred Mr. Ajaj to a different BOP facility located in Indiana, the USP Terre Haute.

Mr. Ajaj's claims center around BOP's alleged infringement on his Sunni Muslim religious beliefs. After my prior orders eliminating claims and the parties' Stipulation to Dismiss, ECF Nos. 111, 135, 211, the remaining claims allege that BOP has violated and continues to violate Mr. Ajaj's rights under the Fifth Amendment and the Religious Freedom Restoration Act ("RFRA"). The RFRA claim consists of four discrete components: (1) BOP's failure to accommodate Mr. Ajaj's observance of sunnah fasts; (2) BOP's failure to provide a halal diet; (3) BOP's failure to provide meaningful access to an imam; and (4) BOP's refusal to allow Mr. Ajaj to engage in congregate prayer. *See* ECF No. 212 at 2.

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A dispute about a fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc.* v. *City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III. ANALYSIS

A. **Mr. Ajaj's Motion for Partial Summary Judgment [ECF No. 219].**

Mr. Ajaj seeks summary judgment on one aspect of his RFRA claim, namely BOP's failure to provide meaningful access to an imam. He alleges that during his time at ADX and now at USP Terre Haute, BOP has allowed him little to no access to speak with an imam despite his frequent requests to do so. In his motion, Mr. Ajaj argued that his religious beliefs regarding meeting with an imam on a regular basis are sincere, and he also argued that the BOP burdened these religious beliefs.

However, I find that there is good cause to deny Mr. Ajaj's motion. First, BOP has represented that by the time I issue this order, it is very likely that USP Terre Haute—particularly the Life Connections Program in which Mr. Ajaj participates—will have hired an imam who will work 30 hour per week. ECF No. 232 at 1. At the time the BOP filed its response, July 3, 2018, the imam candidate was apparently undergoing a background check "in anticipation of beginning work as early as mid-July." *Id.* Because the presence of an imam would moot Mr. Ajaj's claim, I find it prudent to wait until our August 9 trial preparation conference for an update as to the imam candidate's status.

Moreover, this motion must be denied as there is a fact dispute regarding Mr. Ajaj's ability to utilize the "Minister of Record" procedure apparently available to all BOP inmates. Under this policy, inmates are permitted to identify a spiritual leader, such as an imam, with whom they can communicate subject to BOP approval. ECF No. 232 at 11. BOP contends that Mr. Ajaj has had this Minister of Record procedure available but he has declined to invoke it. Mr. Ajaj responds that this argument is an attempt by BOP to "shift its statutorily-mandated obligation to provide pastoral care to ministers," but he admits that "the Minister of Record

opinion technically exists." ECF No. 242 at 10 n.4. The relief Mr. Ajaj requests in his motion—weekly in-person, telephonic, or video meetings with an imam—is apparently precisely what Mr. Ajaj would be provided under the Minister of Record procedure.

BOP has expressed concern that if the Court were to grant Mr. Ajaj's requested relief at this time, Mr. Ajaj's safety and that of the facility at large could be put at risk because other prisoners would see Mr. Ajaj's individualized and weekly access to a spiritual leader as preferential treatment. If this risk can be eradicated by Mr. Ajaj's using a pre-existing BOP policy it should be, but at present I do not have enough information regarding this procedure to make a decision on these grounds. As such, I will wait for further fact development on this procedure and thus DENY Mr. Ajaj's motion for partial summary judgment.

B. **BOP's Motion for Summary Judgment, to Dismiss as Moot, and to Dismiss for Improper Venue [ECF No. 222].**

BOP's motion has three parts: a motion for summary judgment for Mr. Ajaj's failure to exhaust his claims at USP Terre Haute; to dismiss as moot any claims regarding ADX; and to dismiss this case for improper venue. I begin by noting that all three of these BOP arguments are possible only because BOP transferred Mr. Ajaj to Terre Haute in the middle of this lawsuit. At the time this case was filed, Mr. Ajaj had exhausted his claims at ADX, his claims regarding ADX were relevant, and the District of Colorado was the proper venue. However, as a result of the transfer, Mr. Ajaj is now housed in Terre Haute, and there is no indication he will ever return to ADX.

While Mr. Ajaj's claims have not changed—he still challenges BOP policies concerning pill delivery, halal meals, access to an imam, and congregate prayer—Mr. Ajaj now supports his claims with allegations about Terre Haute rather than ADX. BOP classifies this as an improper modification of his claims. ECF No. 222 at 7. In response, Mr. Ajaj argues that to the extent his

4

claims challenge procedures that are not limited to ADX but have broader application including at the Terre Haute facility, then his claims can proceed despite the transfer and resulting allegation supplementation.

To start, I DENY BOP's motion to dismiss for improper venue. Venue of civil actions brought in federal district courts is governed by 28 U.S.C. § 1391. Under § 1391(b) a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

A substantial part of the events giving rise to Mr. Ajaj's claim occurred in Colorado, and as such the District of Colorado was the proper venue at the outset of the case. Moreover, Mr. Ajaj's transfer to Terre Haute does not render the District of Colorado an improper venue, because Mr. Ajaj's suit challenges certain BOP policies that apply to both facilities, not just to the ADX. He has presented evidence that the challenged BOP policies continue to affect him at Terre Haute. I find that it would be a supreme waste of the parties' and the judiciary's time and money to dismiss the case at this point and start anew in Indiana. Moreover, without suggesting that Mr. Ajaj's transfer was motivated other than by legitimate penological reasons, I do not wish to endorse the notion that a transfer of an inmate during the course of a lawsuit necessarily moots the lawsuit. That would be, in my view, an unwise precedent.

Second, I DENY BOP's motion for summary judgment based on Mr. Ajaj's alleged failure to exhaust his claims at Terre Haute. Inmates wishing to challenge the conditions of their

imprisonment in a BOP facility are required to follow BOP's four-step administrative remedy program prior to bringing a suit in federal court. *See Jones v. Bock*, 549 U.S. 199, 211 (2007). This administrative process is the same for inmates at all BOP institutions. Mr. Ajaj followed this process and exhausted his remedies while at ADX. However, due to the timing of this transfer, Mr. Ajaj has not recompleted BOP's four-step administrative remedy process with regard to the BOP policies that he challenges in this lawsuit. BOP argues that this failure to exhaust at Terre Haute justifies dismissal of this case. I do not agree. One purpose of the exhaustion requirement presumably is to give the BOP a reasonable opportunity to correct the alleged wrong before being forced into litigation. Another purpose might be to discourage inmate litigation over complaints so minor that the inmate did not go to the trouble of exhausting administrative remedies. These purposes were effectively achieved by Mr. Ajaj's proper exhaustion of his administrative remedies concerning the policies to which he continues to object, albeit in a different facility. It was not Mr. Ajaj, after all, who decided to relocate him to Indiana. *See Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006) (holding that the benefits of exhaustion are realized if "the prison grievance system is given a fair opportunity to consider the grievance").

Finally, and consistent with the foregoing, I GRANT BOP's motion to dismiss claims which to any extent relate specifically to procedures at ADX. Plaintiff seeks only injunctive relief. Mr. Ajaj does not have standing to seek to enjoin procedures specific to an institution where he is no longer an inmate. There is no indication that he will be returned to ADX. Therefore, the Court lacks subject matter jurisdiction as to any procedure or policy that applied at ADX but is not in force at Terre Haute.

Mr. Ajaj alleges that his claims concerning (1) distribution of his prescribed medication before dawn and after sunset during all religiously required fasting holidays; (2) provision of a halal diet; (3) and provision of meaningful access to an imam on a weekly basis continue to apply to him at Terre Haute. As such, he retains standing to challenge these procedures or policies, and I DENY BOP's motion to dismiss as to these three claims.

However, Mr. Ajaj no longer has standing to challenge BOP policies regarding communal prayer. Mr. Ajaj is apparently now able to pray communally at Terre Haute. The Life Connections Program allows him special access to religious activities including group prayer. Mr. Ajaj argues that the program only lasts 18 months, and therefore, his "short-term access to the unique opportunity" to participate in group prayer is not a reliable resolution of his claim. ECF No. 228 at 13. However, BOP represents that "inmates often remain in the program after their graduation, serving as a teacher or mentor to other inmates." ECF No. 232 at 7. As such, there is not an imminent risk that Mr. Ajaj's ability to participate in this program (and therefore group prayer) will end in the near future. The only concrete fact is that Mr. Ajaj is currently allowed to pray five times daily in a group setting at Terre Haute, and as such he suffers no injury-in-fact with regard to this policy or procedure. He therefore does not have standing to seek injunctive relief. As such, I GRANT BOP's motion to dismiss his claim as to that issue.

**C. Plaintiff's Motion for Reconsideration of Order on Petition for Writ of Habeas Corpus ad Testificandum [ECF No. 223].**

Earlier in the case plaintiff moved for a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(5) directing the U.S. Marshal to transport Mr. Ajaj from his then place of incarceration, USP-Florence in Florence, Colorado to Denver to appear physically at his trial. ECF No. 175.

The Court denied the motion, citing security issues and the ability of the plaintiff to observe and to participate in the trial by video conference. ECF No. 191. He now seeks reconsideration of that order.

Section (a) of the cited statute provides district courts discretion to grant writs of habeas corpus. Section (c) then provides, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . it is necessary to bring him into court to testify or for trial." 28 U.S.C. §§ 2241(a), (c). In *Hawkins v. Maynard,* 89 F.3d 850 (10th Cir. 1996) (unpublished table opinion), the court noted that "[a] prisoner does not have an absolute right to be present at his civil trial or pretrial proceedings." *Id.* at *1. Rather, in exercising its discretion the district court "must weigh the prisoner's need to be present against concerns of expense, security, logistics and docket control." *Id.* (citing *Muhammad v. Warden, Baltimore City Jail,* 849 F.2d 107, 111-12 (4th Cir. 1988).

Plaintiff argues (1) the BOP's transfer of Mr. Ajaj to USP-Terre Haute demonstrates that he can function in a less restrictive environment without posing security issues, and (2) his trial team cannot fully and fairly represent him at trial unless he is physically present.

The BOP responds that Mr. Ajaj was incarcerated as a result of his having been convicted for his role in the 1993 bombing of the World Trade Center, and even today he remains a "maximum-custody" inmate. ECF No. 230 at 4-5. In support of its opposition to the requested writ, the BOP provides the following:

- Declaration of Richard Hudgins, the warden of FCI-Englewood in Littleton, Colorado. ECF No. 230-1. This is the facility where Mr. Ajaj would be held if brought to Colorado for trial. Mr. Hudgins states that he is familiar with Mr. Ajaj, and he describes the security, logistics and expense concerns he would have if the Court grants the writ. ECF No. 230-1. FCI-Englewood is a low-security institution that would have to make a

8

number of accommodations for Mr. Ajaj, other inmates and staff. The total cost to the institution for a five-day trial would be approximately $12,634.50. *See* ECF No. 230-1.

- Declaration of Jason Brackett, Supervisory Deputy, United States Marshal Service. ECF No. 230-2. The USMS would be responsible for providing security in the courthouse. He states that he has familiarized himself with Mr. Ajaj, and that the USMS would classify him as a "high-security risk due to the nature of his conviction, the length of his sentence, and the potential notoriety he may bring with his presence at the courthouse." *Id.* at ¶5. Accordingly, heightened security procedures would be required, resulting in approximately $7,600 in costs to the USMS. *Id.* at ¶8. The USMS would also require that Mr. Ajaj be subject to a strip search and full restraints. *Id.* at ¶10.

- Declaration of K. Robert Schalburg, Supervisory Attorney for the BOP facilities at Terre Haute, Indiana. ECF No. 230-3. Mr. Schalburg states that the BOP will make video conferencing facilities available for use during the trial of this case. *Id.* at ¶4. It will also make Mr. Ajaj available to his lawyers before court each morning and after court each afternoon, and during breaks allowed by the Court during the trial, for confidential communications by video or telephone. *Id.* at ¶5. He notes that a past problem with the functioning of the video equipment, included in plaintiff's motion as one of the reasons for plaintiff's opposition, have been corrected, but that if there were any malfunction of the video equipment, Mr. Ajaj would immediately be placed on a speaker telephone to ensure that he can continue to participate in and listen to the trial. *Id.* at ¶6.

The Court does not doubt that it would be somewhat easier for Mr. Ajaj to communicate with this lawyers, and vice versa, and certainly more convenient, to have Mr. Ajaj present in person for his trial. However, the Court finds that those reasonable concerns are outweighed by

9

other concerns in this instance. The BOP and its affiants have described security and logistical concerns related to transporting and housing a maximum security inmate for this trial. The affiants have also attested to some of the expenses involved, and these apparently do not include the expenses required to bring Mr. Ajaj from Terre Haute, Indiana to Denver and to return him to Terre Haute. I recognize that any increase in either risk or expense resulting from his transfer to Terre Haute is the result of decisions made by the BOP. However, as I have noted earlier in this order, I have no reason to believe that the transfer was made for other than legitimate penological reasons.

In addition I note that this is a civil trial. It is a trial to the Court, not a jury trial. It is a very old case, having been filed on May 11, 2015. Therefore, although there have been some changes in the composition of Mr. Ajaj's trial team over the years, at least some of them have had access to Mr. Ajaj in Colorado. As noted, the Terre Haute facility will make video conference technology available to Mr. Ajaj throughout the trial and will also facilitate confidential communications between Mr. Ajaj and his lawyers before and after trial each day and during breaks.

Applying the *Muhammad* factors which were cited with approval by the Tenth Circuit in its unpublished table opinion in *Hawkins,* and exercising its discretion, the Court denies the motion for reconsideration.

### D. **Plaintiff's Motion to Exclude Expert Witness Testimony [ECF No. 238].**

Plaintiff contends that certain opinions proffered by defense expert Ammar Amonette do not pass muster under Fed. R. Evid. 702. Mr. Amonette is an expert on Islamic religion and law, but plaintiff contends that some of his opinions are outside his expertise and are not based on

sufficient facts and data, i.e., opinions concerning (1) the United States Department of Agriculture's slaughtering practices and (2) prison security. Defendant has not yet responded.

Because this will be a bench trial, the Court finds that there is no need to conduct a separate "Daubert" hearing in advance of trial. The Court will consider the motion and any response and reply that might be filed and exclude or ignore opinions that are not sufficiently relevant and reliable to be admitted under Rule 702.

**E. Plaintiff's Motion in Limine [ECF No. 241].**

Plaintiff moves *in limine* to preclude the defendant from offering evidence of the criminal conduct for which he stands convicted, his whereabouts before the crime was committed, and his associates. Plaintiff also asks the Court to order the defendant not to describe Mr. Ajaj as a "terrorist." The defendant has not yet responded.

For reasons similar to those concerning the opinions of Mr. Amonette, the Court declines to rule on these issues *in limine*. In this civil bench trial the Court will not admit evidence, and will disregard offers of evidence, that is not relevant or that is unduly prejudicial. Of course, the Court is aware of the bare bones of Mr. Ajaj's conviction by necessity, as plaintiff's motion for a writ of habeas corpus to bring him from Terre Haute, Indiana to Denver for his trial made some aspects of his criminal history relevant to security and logistical issues.

Plaintiff appears to be concerned that some persons equate Muslims and Islamic religion with terrorism or violence. If there are people with such views, this Court is not among them. Whether security or other issues arising from Mr. Ajaj's criminal history might raise legitimate penological concerns relevant to the issues at trial is something as to which the Court has no present knowledge. The Court will address such issues if and as necessary in the context of the evidence and arguments presented at trial, rather than in a pretrial *in limine* ruling.

## IV. ORDER

1. The Court DENIES plaintiff's motion to dismiss, ECF No. 219.

2. The Court GRANTS IN PART and DENIES IN PART defendant's motion for summary judgment, ECF No. 222. To the extent that Mr. Ajaj seeks to enjoin policies or procedures that are limited to the ADX facility, and to the extent he is complaining about denial of his ability to pray communally, the complaint is dismissed without prejudice.

3. The Court DENIES plaintiff's motion for reconsideration, ECF No. 223.

4. The Court DENIES without prejudice plaintiff's motion to exclude expert testimony, ECF No. 238.

5. The Court DENIES plaintiff's motion in limine, ECF No. 241.

DATED this 1st day of August, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge