IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-00992-RBJ-KLM

AHMAD AJAJ,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS

    Defendant.

---

# ORDER ON POST-TRIAL MOTIONS

---

The background, facts and history of this case are well documented in several court orders, including the Findings of Fact, Conclusions of Law and Order of Judgment issued by the Court on September 13, 2018 following the trial of the case. ECF No. 291. Notwithstanding that order, however, disputes have continued concerning one issue resolved by the latter order, the defendant's compliance or non-compliance with that order, the form of the Final Judgment entered September 14, 2018, and the determination of the amount of reasonable attorney's fees to be awarded to the plaintiff. I have reviewed the post-trial motions, responses and replies and resolve them as follows:

### A. Motion to Alter Judgment, ECF No. 301.

Defendant points out, correctly, that the Final Judgment was incomplete. Also, it appears from other post-trial motions that the parties are disputing what the Court intended to order with respect to the halal diet issue. Accordingly, the motion is granted, and an Amended Final Judgment will be issued.

B.  **Motion for Attorney's Fees, ECF No. 315.**

Plaintiff requests an award of attorney's fees of $504,065.44 and costs in the amount of $33,044.10.  According to the motion the parties were negotiating concerning an amount when plaintiff determined that the defendant was not complying with the Court's injunction order regarding Mr. Ajaj's halal-certified diet.  At that point plaintiff apparently broke off the negotiations.  *See* ECF No. 315 at 1-2.

The Clerk has set a hearing concerning costs for May 2, 2019.  Regarding attorney's fees, the Court is guided by the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974].[1]  The Colorado Rules of Professional Conduct provide a similar list of relevant factors.[2]  Suffice it to say that the amount of fees requested is not what the Court would consider reasonable.  The Court appreciates that plaintiff's legal team worked hard and effectively, ultimately achieving policy changes by the Bureau of Prisons that worked to the plaintiff's benefit.  On the other hand, the plaintiff has not achieved all the results he sought.  Also, according to Ms. Godfrey's declaration 20 students and 4 supervisors recorded time to the case.  That inevitably results in inefficiencies, as is evident from the fact that even after discounting supervisors' time by 15% and student attorney time by 87.5% plaintiff seeks more than a half million dollars for services rendered to Mr. Ajaj.  The law students were bright and

---

[1] *Johnson* lists 12 factors for courts to consider in determining reasonableness: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney's; (10) the undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 717-19.

[2] The Colorado Rules of Professional Conduct are found as an Appendix to Chapters 18 to 20, COLORADO COURT RULES – STATE (2018).  These factors identified in Rule 1.5 are (1) time and labor required, (2) likelihood of preclusion of other employment, (3) fee customarily charged in the locality, (4) amount involved and results obtained, (5) time limitations imposed by the client or circumstances, (6) nature and length of the professional relationship, (7) experience, reputation, and ability of the lawyer(s), and (8) whether the fee is fixed or contingent.

able, but they were not experienced civil rights attorneys. And, there appears to be no limit to the number of hours recorded. There was not, for example, the practical limit that results from the necessity to bill time to a paying client.

The Court directs the parties to resume negotiations toward a reasonable compromise and to set an evidentiary hearing if they fail after exercising their best efforts to achieve a resolution.

C. **Motion for an Order to Show Cause Why Defendant BOP Should Not be Held in Contempt, ECF No. 317.**

Plaintiff, who is now located at the United States Penitentiary in Allentown, Pennsylvania, complains that he is not being provided the same certified halal foods that he was receiving at USP-Terre Haute at the time of the trial. However, the Court's intent was not to require the BOP to provide precisely the same foods, nor was it to require the BOP to provide whatever food items Mr. Ajaj prefers. The Court's intent was to require that the BOP provide a certified halal diet for Mr. Ajaj.

In its response to this motion the BOP states that it has continued provide Mr. Ajaj with three daily halal-certified meals, and that the menu has been adjusted to address Mr. Ajaj's medical needs. ECF No. 325 at 1. The BOP further states that while Mr. Ajaj has provided a long list of foods that he believes he cannot eat, there is no medical evidence to support his assertions. *Id.* at 2. Rather, the Chief Dietician and the physician at his current institution have "repeatedly and extensively reviewed his medical records and his menu, and have determined that his menu appropriately and reasonably minimizes the types of foods that relate to his medical issues." *Id.* The response indicates that on February 15, 2019 Mr. Ajaj "began to refuse to eat the halal-certified meals and instead to select foods he likes – including hamburgers, cake, and sour cream and onion potato chips – from the main food line in the inmate cafeteria." *Id.*

3

The BOP nevertheless continues to purchase halal-certified meals for Mr. Ajaj, and it throws them in the trash when he refuses to eat them.

There is no basis for the Court to find that the BOP is not complying with this Court's order. On the contrary, it appears to the Court that the BOP is in compliance, even though compliance is causing waste of food and taxpayer dollars. The motion is denied. If Mr. Ajaj continues to refuse to accept the certified halal meals provided by the BOP, then the Court will entertain a motion to permit the facility to discontinue providing such meals to him.

### D. **Plaintiff's Motion for Relief from Order (Doc. 243) and Judgment (Doc. 292), ECF No. 318.**

In its Findings, Conclusions and Order of Judgment the Court found that Mr. Ajaj had the opportunity to engage in group prayer daily at the Terre Haute facility. However, in the pending motion plaintiff states that when he arrived at USP-Allentown he could only engage in group prayer with other Muslims twice a week, and that only after his lawyers conferred with BOP counsel, "the BOP supposedly and suddenly accommodated this religious practice." ECF No. 318 at 2. Plaintiff states that, even if that is true, "this change in circumstances shows this burden on Mr. Ajaj's sincerely held beliefs is capable of repetition but has yet evaded review." *Id.* Therefore, plaintiff argues that the Court should reconsider its prior order and resurrect Mr. Ajaj's legal claim of entitlement to group prayer.

In response, after explaining why Mr. Ajaj was transferred from Terre Haute to Allenwood, the BOP informs the Court that when Mr. Ajaj arrived at Allenwood, Muslim inmates could gather in the chapel for congregate prayer at least twice per week. However, after Mr. Ajaj filed a grievance seeking additional group prayer opportunities, prison officials changed

the congregate-prayer rules to allow inmates to pray together almost any time during the 15 hours that they are out of their cells. ECF No. 326 at 2.

In its reply plaintiff argues that the BOP's conduct is "yet another attempt to manipulate this Court's jurisdiction over Mr. Ajaj's religious freedom claims." ECF No. 329 at 1.

I find no reason to reopen the group prayer issue. First, I did not require that the BOP keep Mr. Ajaj at Terre Haute, nor have I attempted to interfere with the BOP's decisions as to where Mr. Ajaj may be located. Second, I have no reason to believe that Mr. Ajaj was transferred in any attempt to avoid or moot this Court's orders. Third, USP-Allenwood quickly modified its previous policy and made group prayer available to Mr. Ajaj and others. Whether this change was the result of Mr. Ajaj's grievance, or counsel's conference with BOP counsel, or otherwise, the fact is that group prayer is available to Mr. Ajaj. He apparently suspects that this might not be the case in the future, but that is nothing but speculation. The motion is denied.

E. **Motion for Extension of Time to Respond to Plaintiff's Petition for Attorney's Fees and Expenses, ECF No. 322.**

In view of the Court's ruling on the pending motion for attorney's fees, this motion is moot.

F. **Unopposed Motion for a Three-Business Day Extension of Time . . . , ECF No. 323.**

This motion is granted. The response was filed within the time requested.

**ORDER**

1. Defendant's motion to alter judgment, ECF No. 301, is GRANTED.
2. Plaintiff's motion for attorney's fees, ECF No. 315, is DENIED.
3. Plaintiff's motion for an order to show cause, ECF No. 317, is DENIED.

4. Plaintiff's motion to set aside, ECF No. 318, is DENIED.

5. Defendant's motion for extension of time, ECF No. 322, is MOOT.

6. Defendant's motion for extension of time, ECF No. 323, is GRANTED.

DATED this 15th day of April, 2019.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge