IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00992-RBJ-KLM

AHMAD AJAJ,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
WARDEN BILL TRUE, in his official capacity,
WARDEN JOHN OLIVER, in his individual capacity,
WARDEN DAVID BERKEBILE, in his individual capacity,
ASSOCIATE WARDEN TARA HALL, in her individual capacity,
ASSOCIATE WARDEN CHRIS LAMB, in his official and individual capacity,
ASSOCIATE WARDEN CALVIN JOHNSON, in his individual capacity,
PHYSICIAN ASSISTANT RONALD CAMACHO, in his individual capacity,
MEDICAL STAFF SAMANTHA MCCOIC, in her individual capacity,
MEDICAL STAFF K. MORROW, in her official and individual capacity,
CHAPLAIN MICHAEL CASTLE, in his official and individual capacity,
CHAPLAIN JASON HENDERSON, in his official and individual capacity,
RELIGIOUS COUNSELOR GEORGE KNOX, in his official and individual capacity,
INMATE TRUST FUND SUPERVISOR KENNETH CRANK, in his official and individual capacity,
NURSE ROGER HUDDLESTON, in his official and individual capacity, and
OFFICER D. PARRY, in his official and individual capacity,

      Defendant.

**REPLY IN SUPPORT OF MOTION TO DISMISS (ECF No. 376)**

As explained in the individual defendants' Motion to Dismiss (ECF No. 376) ("Motion"), they are entitled to qualified immunity on Plaintiff Ajaj's damages claims under the Religious Freedom Restoration Act ("RFRA") because they did not personally violate any clearly established right under RFRA. Plaintiff's response fails to identify clearly established law that the officers violated or to show that their own individual conduct caused RFRA violations.

    **I.**    **The applicable standards**

Plaintiff's response is premised on two erroneous legal premises—that (1) he can overcome

the defense of qualified immunity merely by alleging a substantial burden on some religious exercise, and (2) he has adequately alleged that an individual officer personally violated his RFRA rights if he alleges that he made a request or submitted a grievance to an officer but Plaintiff then did not receive what he requested—regardless of the officer's authority or role. Neither legal premise is correct; in both respects, more is required.

*First*, Plaintiff's argument on qualified immunity ignores that it is *his* burden to overcome the defense of qualified immunity, which in turn requires him to point to authority that shows that it was clearly established that the conduct at issue violated RFRA.

Contrary to what Plaintiff suggests, RFRA does not prohibit all substantial burdens on religious exercise; it prohibits such burdens when they are *unlawful*. *Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020) (RFRA gives "a person whose religious exercise has been *unlawfully* burdened the right to seek 'appropriate relief'") (emphasis added). The Supreme Court and Tenth Circuit have explained that to determine the lawfulness of such a burden in prison, courts are required to consider the specific context and government interests, including security concerns. *See Yellowbear v. Lampert*, 741 F.3d 48, 59 (10th Cir. 2014) (under RLUIPA, which "uses the same language found in RFRA," "the Court has told us that 'context matters.'"); *Holt v. Hobbs*, 574 U.S. 352, 362–63 (2015); *Cutter v. Wilkinson*, 544 U.S. 709, 722–23 (2005) (RLUIPA must be "applied in an appropriately balanced way, with particular sensitivity to security concerns," and "[c]ontext matters"). While RFRA imposes on the government the burden to show that its interests are sufficient and tailored, the allocation of the burden does not mean that courts can determine whether conduct violates RFRA by simply looking at the burden and ignoring the context. Rather, under the law, to determine whether particular conduct violates RFRA, the court must assess the particular context.

Plaintiff's proposed approach ignores this precedent requiring courts to consider the specific prison context in evaluating whether conduct violates RFRA. In Plaintiff's formulation, all he needs to show is a substantial burden on religious exercise. He argues, without citing any authority, that "cases that find a substantial burden—even if they ultimately . . . find no violation of RFRA . . . —provide the law that courts should look to in determining what conduct constitutes a clearly established substantial burden to a religious belief." ECF No. 386 ("Resp.") at 7.

Plaintiff's standard is both unsupported and wrong. Under Plaintiff's proposed test, any prisoner's mere presence in prison—which limits prisoners' religious exercise in countless ways—would ordinarily satisfy his burden in every case to show a RFRA violation. Moreover, Plaintiff's test would undermine the purpose of qualified immunity, where the "salient question" is whether the official had "fair warning" that conduct would violate the law. *Hope v. Pelzer*, 536 U.S. 730, 739, 741 (2002). If a court held that conduct substantially burdened religious exercise, but that the conduct was justified and did not violate the law, a reasonable government official could conclude that a similar burden could be justified for similar reasons. Such a case, certainly, would not provide such an official with "fair warning" that he or she would *lack* qualified immunity for taking a similar action. Not granting such an official qualified immunity for such conduct could improperly lead that official to avoid lawful conduct even when it would not violate RFRA. *See Filarsky v. Delia*, 566 U.S. 377, 389-90 (2012) (qualified immunity helps "to avoid unwarranted timidity in performance of public duties") (cleaned up).

Plaintiff observes that Defendants are asserting qualified immunity in a motion to dismiss rather than at summary judgment, *see* Resp. at 7-8, but Plaintiff still has the burden to overcome the defense of qualified immunity at this stage. Meeting that burden here requires showing that it was clearly established that the conduct at issue was unlawful. *See Ashaheed v. Currington*, 7

3

F.4th 1236, 1243 (10th Cir. 2021) (explaining the two-part burden to overcome qualified immunity on a motion to dismiss). Showing that government action imposed a substantial burden on religious exercise does not necessarily show that the conduct violated RFRA, *see Ajaj v. Fed. Bur. of Prisons*, 25 F.4th 805, 816 (10th Cir. 2022) (explaining that where government action substantially burdens religious exercise, "there is no violation of law" so long as the government interest is sufficient), let alone that it was clearly established that the conduct violated RFRA.

Moreover, the stage of litigation does not alter the legal determination whether other precedential cases have "clearly established" that certain actions so clearly violate RFRA such that they would put defendants on fair notice. To clearly establish that conduct violates RFRA, there must be a showing that at the time of the conduct in question, there was authority from the Supreme Court, Tenth Circuit, or the controlling weight of authority from other courts, that clearly established that such conduct—in a particular prison context—violated RFRA. As explained below, Plaintiff has not identified such authority that meets that standard for any of his claims.

*Second*, Plaintiff's Response understates his burden to show that each individual Defendant personally violated his clearly established RFRA rights. In general, a court deciding qualified immunity must determine "whether *each* defendant's alleged conduct violated the plaintiff's clearly established rights." *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018) (emphasis in original). Here, Plaintiff was required to allege facts showing that each individual Defendant's personal conduct was the cause of the alleged RFRA violation that burdened Plaintiff's religious exercise. This personal role is defined by RFRA's text. Plaintiff must show that his religious exercise was "substantially burdened by the government"—here, by the government official at issue. *See* 42 U.S.C. § 2000bb-1(b).

Plaintiff's Response suggests that he met this burden by alleging that he made requests to

numerous individual Defendants and then did not obtain what he requested. But even if Plaintiff's allegations are enough to show that his religious exercise was substantially burdened, they are not enough to show that any individual who received a request from Plaintiff was the official responsible for that burden. To show their *personal* liability under RFRA, he needs to allege facts showing, at a minimum, that the prison official did not merely receive the request, but was the "government" that imposed the burden—in other words, was the official responsible for the burden on Plaintiff.

It is well-established that an official's mere involvement in handling or denying a grievance is insufficient to show that the official was the person responsible for the alleged deprivation. *See Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018); *Chambers v. Roberts*, No. 13-3195-SAC, 2013 WL 6670521, at *6 (D. Kan. Dec. 18, 2013). Plaintiff argues that *Sherratt v. Utah Dep't of Corr.*, holds that a grievance does not establish personal participation only when the denial of a grievance is "without connection to the violation of constitutional rights alleged by the plaintiff." 545 F. App'x 744, 747 (10th Cir. 2018). But this is exactly the point; Plaintiff must allege facts showing that each individual Defendant caused the violation—that each official was the "government" under RFRA who had the authority to make the decision, in fact made the decision, and would have known that the decision violated Plaintiff's clearly established RFRA rights. Plaintiff's allegations about his numerous requests fail to show that any of the individual defendants who may have received those requests were the government who personally violated his RFRA rights.

    **II.**    **The medication-administration fasting claim fails because it is unexhausted and because the individual defendants are entitled to qualified immunity.**

***This Court ruled that the claim is unexhausted.*** As explained in Defendants' Motion, this Court dismissed the medication-administration claim for failure to exhaust. ECF No. 376 at 7-8. In

5

discussing the medication-administration claim at the Trial Preparation Conference on August 9, 2018, the Court stated to Plaintiff's counsel that "any issue concerning the medication is out for failure to exhaust unless you have some specific exhaustion evidence that you can show me that's specifically referring to medication." *See* ECF No. 258 (transcript excerpt) at 5-6 (emphasis added). Plaintiff's counsel stated that she "[did] not have evidence which specifically refers to medication." *Id.* And, accordingly, the Court held that "the medication issue is out." *Id.*

In his Response, Plaintiff argues that although the Sunnah medication-administration claim has been dismissed, the Ramadan claim has not. Resp. at 15. He bases his argument on a 2016 Order dismissing Plaintiff's claim for injunctive relief relating to Ramadan fasting. *Id.* Plaintiff's argument ignores that the Court later dismissed the entire "medication issue" after Plaintiff was unable to provide any "specific exhaustion evidence "that "specifically refer[ed] to medication." ECF No. 258 at 5-6. Accordingly, the Court has already properly dismissed the medication-administration claim against the individual defendants for failure to exhaust.

***Plaintiff failed to identify any clearly established law compelling the individual defendants to alter his medication-administration times during fasts.*** In his Response, Plaintiff failed to identify any precedent from any court involving the distribution of medication to a prisoner during a religious fast—let alone any precedent showing that there was clearly established law in 2012-2015 requiring prison officials to accommodate Plaintiff's fasting requirements by delivering his medications to him before sunrise and after sunset.

Plaintiff suggests that the cases already identified in Defendants' Motion are sufficient, but this is incorrect. As discussed in the Motion, *Makin v. Colorado*, said nothing about the administration of medication and only found a violation of the First Amendment for failing to accommodate the plaintiff's "*meal requirements* during Ramadan." 183 F.3d 1205, 1215 (10th Cir.

6

1999). Plaintiff argues that *Makin* establishes that the "deprivation of the 'qualitative spiritual experience' of fasting during Ramadan creates a substantial burden." Resp. at 18. This type of general holding cannot possibly have put defendants on notice that they would have to deliver medications outside of the normal routine or else violate Plaintiff's rights. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (clearly established right must be "defined with specificity" and not at "a high level of generality"). Plaintiff also cites *Holland v. Goord*, 758 F.3d 215 (2d Cir. 2014), and *Lovelace v. Lee*, 472 F. 3d 174, (4th Cir. 2006). But neither case had anything to do with medication administration, and both found that prison officials did not violate the inmate's rights. These out-of-circuit decisions do not establish the contours of Plaintiff's purported medication administration right such that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

***No showing of personal liability.*** Plaintiff's Response does not show that line medical personnel (Camacho, Morrow, McCoic, and Huddleston) and the Regional Chaplain (Castle), who had no control over setting the ADX schedule for medication delivery, are personally liable for damages based on institution policies over which they have no control.

Plaintiff argues, without authority, that the failure to grant his grievances suffices to allege personal participation of defendants. Resp. at 17. The handling of grievances, however, is not a violation of RFRA. Even if defendants did personally participate in this conduct, that would not allege that they personally caused any RFRA violation.

### III. It did not violate Plaintiff's clearly established rights not to provide him the specific religious diet he sought when kosher and no-meat diets were available.

***Plaintiff failed to cite any law clearly establishing a right to a specific religious diet given that Kosher and no-meat diets were available.***

Plaintiff acknowledges that there are many cases where courts found no violation where

7

defendants provided kosher or vegetarian diets. Resp. at 13-14. Plaintiff incorrectly argues that these cases have no bearing at this stage in the litigation, but if a court found that similar conduct did not violate an inmate's rights, then defendants could reasonably conclude that they would not violate Plaintiff's rights. *See supra* at 3-4. The existence of cases concluding that there was no violation where kosher or vegetarian diets were available shows that the law is not clearly established. *See Wilson*, 526 U.S. at 618 ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

Plaintiff argues that the generic observation in *Beerheide v. Suthers*, 286 F.3d 1179 (10th Cir. 2002), that "prisoners have a constitutional right to a diet conforming to their religious beliefs" is sufficiently specific to apply to Defendants' conduct. Resp. at 11-12. But Plaintiff reads the holding in *Beerheide* at too high a level of generality. *Beerheide* does not go so far as to hold that it violates RFRA to deny any prisoner any version of any religious diet the prisoner may request— even where other ordinarily-acceptable religious diets have been provided. Moreover, the clearly established law must be particularized to the facts of the case with a high degree of specificity. Plaintiff argues that the particular nuances of the religious diet he sought should have "no bearing on whether the burdens he alleged Defendants imposed on his ability to consume a Halal diet were clearly established as burdens." Resp. at 14. But if a prisoner could reject any religious diet based on personal nuances, BOP employees would face countless lawsuits imposing personal liability on them for failing to accommodate even the most extreme diet requests.

***No showing of personal liability.*** Defendants are also entitled to qualified immunity because the Amended Complaint does not allege facts showing that the individual Defendants had any control over the types and content of menus available at ADX, which were determined at the

8

national level.[1] The Response contends that the Amended Complaint alleges that Defendants Berkebile, Oliver, and Hall "received and responded to several Administrative Remedy Requests" Resp. at 10, but such conduct is insufficient to show that any individual Defendant personally imposed the substantial burden on Plaintiff. Accordingly, Defendants Berkebile, Oliver, Hall, Henderson, Knox, and Crank are entitled to qualified immunity on Ajaj's halal diet claim.

    **IV.**    **No clearly established law required ADX to hire an imam for weekly personal meetings with Plaintiff.**

*Plaintiff cites no cases clearly establishing that prison personnel at a highly secure institution like the ADX were required to hire an imam for weekly personal meetings with him.*

Plaintiff first cites *O'Lone v. Shabazz*, 482 U.S. 342, 347 (1987), arguing that it shows that "an incarcerated person's religious expression is substantially burdened when they are unable to attend weekly services conducted by a spiritual advisor." Resp. at 21. The issue before the Supreme Court in *O'Lone*, however, was not to determine whether the inmate's specific religious exercise was burdened, but to determine "the standard of review for prison regulations claimed to inhibit the exercise of constitutional rights." *O'Lone*, 482 U.S. at 344. The Court determined that the Court of Appeals "was wrong when it established a separate burden on prison officials to prove that no reasonable method exists by which prisoners' religious rights can be accommodated without creating bona fide security problems." *Id.* at 350 (cleaned up). Moreover, the Court concluded that the "prison officials [had] acted in a reasonable manner," and refused to "substitute [the Court's] judgment on . . . difficult and sensitive matters of institutional administration for the

---

[1] Plaintiff claims that Defendants' citation to the Bureau of Prisons Program Statement "draw[s] the Court's attention beyond the Amended Complaint," but, in fact, the Amended Complaint cites the BOP Program Statement (ECF No. 29 at ¶ 188), and, in any event, courts may take judicial notice of BOP policies. *Mohamed v. Jones*, No. 20-CV-02516-RBJ-NYW, 2022 WL 523440, at *28 n.20 (D. Colo. Feb. 22, 2022).

determinations of those charged with the formidable task of running a prison." *Id.* at 350, 353. Nothing in *O'Lone* suggests—let alone clearly establishes—that ADX personnel must hire and provide an imam for weekly personal meetings with an inmate.

Plaintiff next cites *Kikumura v. Hurley*, 242 F.3d 950, 961 (10th Cir. 2001), for the proposition that "it is a substantial burden for someone to not have access to pastoral care." Resp. at 21. But that case did not establish such a principle. *Kikumura* concerned pastoral visits from a *specific* minister requested by Kikumura and the minister. The Tenth Circuit found that denying visits from a specifically identified minister with "particular attributes" that made him well-suited for Kikumura could amount to a substantial burden. But the court did not find a violation; it remanded the case because Kikumura had not provided evidentiary support for his claim. *Id.* at 961. Here, moreover, Plaintiff's request is different. Unlike Kikumura, Plaintiff does not allege that he identified an imam and sought contact with that specifically identified imam. Rather, Plaintiff claims that ADX officials should have located an imam for him who would satisfy all of his exacting standards for what an imam should be.

Finally, Plaintiff cites *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995), to say "that 'the failure to provide or allow reasonably sufficient alternative methods of worship' would impose a substantial burden under RFRA." Resp. at 21 (quoting *Werner*, 49 F.3d at 1480). But Werner's general recognition of worship does not show any RFRA violation here. Plaintiff fails to cite the full quote from *Werner*, which states that RFRA "*need not drive a prison to employ clergy from every sect or creed found within its walls*; however, the failure to provide or allow reasonably sufficient alternative methods of worship would, in the absence of a compelling state interest, run afoul of the Act." *Werner*, 49 3d. at 1480 (emphasis added).

Here, Plaintiff seeks more than anything that *Werner* required—for the prison to find and

10

hire an imam with his views for weekly, hour-long personal meetings. Plaintiff cannot show that every reasonable prison official would have known for certain that RFRA imposed that obligation.

*No showing of personal liability.* Nowhere in the Amended Complaint does Plaintiff allege that any of the individual defendants were personally responsible for, or had any authority to, launch a nationwide search on behalf of BOP to find an imam who would agree to work with an inmate at the ADX. Nor does Plaintiff allege that any individual defendant took any action to block his access to an imam when one was available. Nor does Plaintiff allege that any individual defendant prevented him from procuring his own imam to visit with him.

Plaintiff argues that he requested, but did not obtain, an approved Muslim volunteer or access to an imam at ADX for a number of months. Resp. at 20. Even if these allegations were sufficient to state a claim, which they are not, Plaintiff fails to specifically identify which defendants were responsible for what conduct. Most of the paragraphs in the Amended Complaint cited by the Response do not mention defendants or inappropriately group all defendants together. *See, e.g.,* ECF No. 29 ¶¶ 260-267, 270-273, 278, 281. This is insufficient to "make clear exactly *who* is alleged to have done *what* to *whom*." *Robbins v.* Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original). The only actions specifically attributable to individual defendants are responses to grievances, which is insufficient to allege personal participation. *Sherratt*, 545 F. App'x at 747.

### V.     There is no clearly established right to group prayer at ADX.

*No clearly established law required access to congregate prayer in a maximum security prison setting.* Plaintiff fails to identify clearly established law showing that not providing Plaintiff with group prayer in a maximum-security prison setting violated his rights under RFRA. In fact, the Tenth Circuit has held just the opposite. *Williams v. Miller*, 696 F. App'x 862, 864 (10th Cir.

11

2017) (rejecting First Amendment claim of Muslim inmate who requested to participate in Jumu'ah in a maximum-security prison and finding that even a complete prohibition on group prayer is "rationally connected to the safety and security risks associated with escorting maximum-security inmates to and from group activities").

Plaintiff first cites *Cutter*, 544 U.S. at 720, as holding that "participation in group worship is a protected exercise of religion." Resp. at 24. But *Cutter* did not establish that it violated RFRA not to provide for group worship in a maximum security prison setting where inmates are separated from others due to serious security concerns. *Cutter* concerned a facial challenge to RLUIPA questioning whether it "exceed[ed] the limits of permissible government accommodation of religious practice." *Id.* Because it was a facial challenge, the Sixth Circuit observed that "the facts of the individual cases [were] not particularly relevant." *Cutter v. Wilkinson*, 349 F.3d 257, 260 (6th Cir. 2003), *rev'd*, 544 U.S. 709 (2005). At most, the Supreme Court's decision in *Cutter* acknowledged that the "exercise of religion" may involve "physical acts such as assembling with others for a worship service." *Id.* (cleaned up). However, nothing in *Cutter* answers the question of "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). A case examining the constitutionality of RLUIPA where specific facts are not relevant, by definition, provides insufficient specificity to present clearly established law in a prison setting like the ADX.

Plaintiff cites *O'Lone*, 482 U.S. at 347, to contend that the Supreme Court "implicitly recognized . . . that barring Muslims from congregational services constitutes a substantial burden under the First Amendment." Resp. at 24. Plaintiff admits that any relevant holding in *O'Lone* was at most *implicit*, which is insufficient to *clearly* establish a right. Moreover, as discussed above, a different issue was before the Court in *O'Lone,* and the Court concluded not that there was a

violation of law, but that the prison officials acted reasonably. *See supra* 9-10.

Next, Plaintiff cites *Greene v. Solano County Jail*, 513 F.3d 982, 988 (9th Cir. 2008), to contend that "a jail's policy of prohibiting a maximum-security prisoner from attending group religious worship services substantially burdened his religious exercise under RLUIPA. ECF No. 286 at 24. But *Greene* is an out-of-circuit decision. Moreover, it considered the treatment of prisoners in a county jail with lesser security concerns than those at ADX. For example, at the Solano County jail, inmates were escorted to the law library classroom in groups and "left unattended in group settings." *Greene*, 513 F.3d at 989. That environment presented a far different context than the highly restrictive and unusually dangerous environment of ADX. As such, *Greene* could only apply to the facts here at "a high level of generality," which is not sufficient to put personnel at a prison like ADX on notice.

Plaintiff also cites *Sabir v. Williams*, -- F. 4th --, 2022 WL 15527876 (2d Cir. 2022), in a Notice of Supplemental Authority filed on October 29, 2022, for the proposition that "a reasonable officer should have known, based on clearly established law, that denying a Muslim inmate the ability to engage in group prayer without any justification or compelling interest . . . violates RFRA." ECF No. 392[2]. *Sabir*, however, fails to show that ten years ago Tenth Circuit law clearly established that maximum security prisoners were entitled to group prayer five times a day.

*Sabir* and the "clearly established law" cited therein, *Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006), are both from the Second Circuit, not the Tenth Circuit. They do not reflect the "clearly established weight of authority from other courts" in existence at the time in question. *Estate of Smart*, 951 F.3d at 1168-69. To the contrary, *Williams*, a Tenth Circuit decision, suggests

---

[2] Plaintiff's Notice of Supplemental Authority cites *Sabir v. Williams*, 37 F.4th 810 (2d Cir. 2022), but that opinion was amended and superseded on October 28, 2022.

that no congregate worship need be allowed in a high-security setting. *Williams*, 696 F.App'x at 864.  *Sabir* and *Salahuddin* hold that prison officials violate RFRA "when they substantially burden a plaintiff's exercise of religion without demonstrating that they had *any* interest, compelling or otherwise, in doing so." *Sabir*, 2022 WL 15527876 at *6 (citing *Salahuddin*, 467 F.2d at 275-76) (emphasis in original). Indeed, *Salahuddin* was a decision on a motion for summary judgment where the prison identified no real interest to justify the burden. *Salahuddin*, 467 F.2d at 275-76. Also, *Sabir* involved a "low-security federal prison" where "[m]any living quarters remain unlocked, and inmates regularly gather, with prison approval, in large groups for activities ranging from inmate-led fitness classes to sports and card games." *Sabir*, 2022 WL 15527876 at *1.

Here, by contrast, Plaintiff cannot show an absence of security interests. Plaintiff admits that defendants cited security interests as reasons to deny group prayer at ADX. ECF No. 29 at ¶¶ 268, 312. It is well-established that security concerns at ADX are significantly higher than at the prison in *Sabir*. A single out-of-circuit decision in the context of a minimum-security prison did not provide reasonable notice to the individual defendants that denying Plaintiff group prayer could violate his rights under RFRA.

*No personal participation*. Nowhere in the Amended Complaint does Plaintiff allege that Knox, a counselor and "assistant" to Chaplain Henderson, or Parry, a correctional officer, were personally responsible for, or had any authority to alter, ADX policy on group prayer. Plaintiff's allegations are, instead, primarily based on his dissatisfaction with responses to various complaints and grievances, which is not sufficient to establish that Knox or Parry personally participated in the challenged prayer policy. *Sherratt*, 545 F. App'x at 747. Additionally, Plaintiff's allegations that Parry "threatened disciplinary action against Muslim prisoners," ECF No. 29 at ¶ 307-308, say

14

nothing about Parry's alleged treatment of Plaintiff and are not sufficient to plead that Parry violated Plaintiff's clearly established rights. *See Matthews*, 889 F.3d at 1144-45.

## VI. Conclusion

The Court should dismiss all claims against the individual defendants.

DATED this 2nd day of November 2022

                                                COLE FINEGAN
United States Attorney

s/ *Logan Brown*
Logan Brown
Susan Prose
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
logan.brown@usdoj.gov
susan.prose@usdoj.gov
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following recipients:

arandolph@law.du.edu
lrovner@law.du.edu


                                                s/ *Logan Brown*
Logan Brown